Mr. Richard Basile, appearing on behalf of the appellant Oladayo Oladokun. Go ahead. You can proceed whenever you're ready. Yes. Your Honor, Mr. Oladokun had pled guilty to two counts of conspiracy to commit bank fraud and money laundering, and he was sentenced by the lower court in February of 2023. Most of this appeal is devoted to contesting the sentence itself. And specifically, the trial judge is finding that he should be imposed an 18 levels of enhancement for intended loss. And the argument before the court, which was pretty extensive, dealt with whether or not the trial court should only assess actual loss or intended loss. And ultimately, Judge Fela, who gave a lot of consideration to that issue, relied on this court's ruling in U.S. v. Powell, which didn't deal with intended loss and actual loss, but dealt with another issue, but specified that as the standard. And so he was assessed 18 levels of enhancements instead of eight. Now, he filed a pro se brief, as you know, and Mr. Seidler also filed a brief which reiterated what was set forth in Mr. Oladokun's brief. And at the end of his brief, which was submitted in September of last year, he noted that there was a pending case before the Supreme Court, Loper Bright Enterprises v. Raimondo, with the hope or the dream that it might somehow affect his case. Well, in June of this year, June 28th to be exact, the Supreme Court in Loper Bright Enterprises v. Raimondo- I don't mean to interrupt you, though, but let me just- I read the briefing, but this is all about the commentary under 2B, whether you apply that or not, right? Yes, sir. But Judge Fehla alternatively concluded that the intended loss would apply under, because of the conspiracy statute, under 2X1.1A, where it refers in the guideline itself to any intended offense or conduct. So isn't that a completely separate alternative ground that doesn't invoke any type of commentary to apply the $3.5 million intended loss? Well, it does, Your Honor, and you're correct. That was her fallback position, but- So why do we have to even look at this issue that you're raising? Well, if I may refer to 2X1.1, I'll answer that. 2X1.1A says the base offense level from the guideline for the substantive offense plus any adjustments from such guideline. Such guideline is the guideline itself, not the commentary or the application notes. All right. So basically- But we've said that you read the commentary and the guideline together and that there's no contradiction. So like you're saying, he was depending on a hope and a prayer that Luper Bright Enterprises might affect the way we interpret the guidelines, and it does not. Luper Bright is about deference to an agency's interpretation of a statute, which is Chevron deference. Stinson, which is about how you treat the commentary of the sentencing commission to the guidelines, relied on our deference, which is about deference to an agency's interpretation of its own regulation. So that's not affected by Luper Bright. But we just said a month ago in a case called United States v. Rainford that we're going to adhere to Stinson because an agency's interpretation of its own regulation is not really the same thing as the sentencing commission's commentary to the guidelines. And on this specific issue, we said there's no contradiction in any event between the commentary that says the loss includes the intended loss and the guideline that refers to loss. Right? So isn't this just a resolved question? No, I truly believe that Luper Bright wipes out everything that came from Chevron and thereafter from 1984 up to the present. In fact, they say that Chevron is overruled. I understand, but I don't understand why Chevron has anything to do with this case. Well, because it had to do ultimately with giving deference to agency regulations in terms of ambiguity. No, Chevron is about an agency's interpretation of a statute. Right? Right. But you were talking about the sentencing commission's commentary to the guidelines. Well, right. In the sentencing commission, as analogous to the Supreme Court decision here, the sentencing commission is an agency. There are guidelines which were approved and passed by Congress, and that is the body of the law. But then what happened – Not actually. I mean the sentencing commission just promulgates the guidelines of the commentary through its process, which is congressionally authorized. But it's not as if the sentencing guidelines are adopted as a statute. But the – well, they have the power to make those guidelines. I don't believe that they have the power to do commentaries and to do application notes. And I think the way that Loewer-Bright applies to that is that an agency's interpretation is not entitled to deference. And this is what the commentaries and the notes do. It's their interpretation – In August, we issued an opinion called United States v. Rainford, which says there's this argument that the commentary that says intended loss contradicts the guideline that just says loss, which should refer to actual loss. And we said that's wrong. There's no contradiction between the commentary and the guideline, and so we're going to understand the guideline as incorporating intended loss. So even if you thought that that was wrong, that Loewer-Bright somehow should have changed the decision. We've resolved this question. Well, it's our position that Loewer-Bright says that an independent interpretation is to be made by the trial court and not giving any deference to footnotes or applications. I want you to use all your time on this because under the conspiracy guideline itself, it says any intended conduct, right? Any intended offense conduct is to be considered for a conspiracy. And we have said that includes intended loss. It has nothing to do with the commentary whatsoever. So this is – it doesn't even matter in this case. Well, as I said, 2X1.1 says that it's – these are adjustments that is in the guideline, not in the commentary or in the footnote. No. It says any intended offense conduct, and we have said that that language in the guideline itself means that you apply 2B1.1 loss amounts to that. So there's no use of the commentary, zero use of the commentary with the conspiracy guideline, none. So if you want to cover the other sections of your brief or your arguments, you can do that now. Yes, Your Honor, just very briefly. There was a two-point enhancement for 10 or more victims. And in the pre-sentence report, what the pre-sentence report refers to is that this was a scheme to defraud banks which held FDIC deposits. We don't know really how many victims there were. There were not 10 banks, that's for sure. But that's what the pre-sentence report refers to. And in paragraph 109 regarding restitution, it notes that the specifics of which entities are entitled to restitution has not been provided to date. So the government, in our opinion, never established who or how many victims there were. Well, they had nine individuals whose identities were stolen, right? Well, but – Two companies, right? Again, the guideline doesn't refer to that as an actual loss, okay? So that's a matter of interpretation. Again, the commentary refers to that. This is your argument that we should discount the commentary, right? Yes. So if we did not, in fact, discount the commentary, you'd agree that the guidelines say that when you have a case involving a means of identification, victim includes a victim of identity theft, right? That's what the commentary says. So this goes back to your idea that Looper Bright somehow obliterated the commentary in the sentencing guidelines? Correct. Okay. Correct. So – but even with the theft of identifications, whose identifications were stolen was not clear from the record. The record seemed to focus and the pre-sentence report seemed to focus on the losses to the banks, which were insured. And so our position is that the people or the entity who suffered the loss was really the FDIC, if anybody. Although the pre-sentence report says we're not sure who should get restitution in this case, which basically says we're not sure who the victims are. And so that's our position as to why the two points should not have been assigned for an enhancement. There was a four-point enhancement for managerial and supervisory. And our problem with that is that there were really – the trial court did not consider a – the potential three-point for managing as opposed to four points for supervisory. What the evidence showed was that there were communications on the telephone or on the – by cell phone or by e-mail or a text message regarding who was going to do what, regarding what my client was going to do and what he wanted somebody else to do. Is that managerial? Is it supervisory? Is it a three-point or is it a four-point for originating the scheme? I don't believe that there was sufficient evidence to show that a scheme was originated by my client. Certainly had communications with people. Any conspiracy is going to involve communications or else you probably don't have a conspiracy. So we feel that there was not sufficient evidence for the four-point enhancement for managerial, supervisory, and that there was a three-point issue regarding a lesser involvement of my client, which I don't believe the court considered. And so we think that the enhancement should be reconsidered or denied in this case. All right. Thank you. Thank you. We'll hear from the government, Mr. Lee. Good morning. May it please the court. My name is Alexander Lee. I represent the United States of America in this appeal as I did before the district court. I'll just briefly address the three issues raised in argument just now. Beginning with the loss amount and the definition, under either Section 2X1.1, which is the conspiracy guideline, or 2B1.1, which is the fraud guideline, the enhancement was appropriately applied for the intended loss. In a conspiracy case, as this was, really the only, in some cases, the only loss can be the intended loss. And so 2X1.1 was appropriately applied, and as the court noted, as for 2B1.1, the court held just a month ago in Rainford that intended loss is part of the loss determination. And we hear that decision after Loper-Bright. That's right, Your Honor. And was there any reason to think Loper-Bright would have affected it? I mean, Loper-Bright is about deference to an agency's interpretation of a statute. And this is, at most, an agency's interpretation of a regulation. That's right. And as the court pointed out, Stinson rests on a somewhat different foundation than the Chevron cases. The guidelines and the commentary are not the product of delegated agency rulemaking. The guidelines are not an agency rule. They are their own unique body, and under Stinson, the Supreme Court said that the commentary and the guidelines are to be read together. And even in the case of unambiguous guidelines, the commentary can lend additional insight and application. The Supreme Court said that, and we also, in Rainford, said there's no threshold test of ambiguity. You read it all together. That's right, Your Honor. This court reaffirmed its adherence to Stinson. With respect to the enhancement for ten or more victims, I think there's no factual dispute that there were at least nine identity theft victims. There's no factual dispute. There were at least two businesses that suffered actual loss. And so there's really no factual dispute at all that there were at least ten victims in some sense. The only question is whether the victims can include victims of identity theft. And because the defense did not challenge this at the Fatico hearing, this is reviewed only for plain error. The district court could not have committed plain error by adhering to not only the commentary, but also to this court's own instructions in various unpublished decisions, but recent decisions, that the application note 4E should be applied. That is that identity theft victims are in fact victims under the meaning of the guideline. With respect to the enhancement for five or more participants, I think there was a shift in the appellant's argument here. I think what I heard at oral argument was that the district court should have considered a three-point enhancement instead of a four-level enhancement. That argument has been forfeited. That argument was not raised either before the district court or in briefing before this court. And so this court should not consider it. That argument is forfeit. Wait, sorry. What argument did you say was forfeited? I believe the argument made just now was that the district court should have considered or applied a three-level enhancement instead of a four-level enhancement for the defendant's fault. No, right. You're saying that that wasn't raised in the briefing. That was not raised in the briefing. What they raised in the district court was whether or not there were five participants or not, right? Wasn't that the issue? That was the core issue, whether there were five, at least five participants in the scheme. So do you have a view about it? If we decided to excuse the forfeiture, do you think that there was consideration of the management and supervisory issues? Absolutely. The district court considered at a fatico hearing the defendant's role within this conspiracy. And as the district court put it, he stood at the apex of this conspiracy. And he stood at the apex of this conspiracy because the defendant was the person directing the activities of other people, including personally at least four other people through text messages, where he would instruct people to open bank accounts, where he would pass on checks information, where he would collect account information so that he could log in online and view that account information. He was the leader of this conspiracy, and a four-point rule enhancement was properly applied. I'm happy to answer any questions the court may have, but otherwise I'll rest in our submission. All right, thank you. Thank you. Thank you both for a reserved decision. Have a good day.